STATE of Maine

v.

David GRANT.

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 1, 1990.
Decided March 21, 1990.

Michael Povich, Dist. Atty., Steven A. Juskewitch, Asst. Dist. Atty., Ellsworth, Garry L. Greene, Asst. Atty. Gen., Augusta, for plaintiff.

Rosemarie Giosia, Edward J. McSweeney, William Ferm, Ferm & McSweeney, Ellsworth, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

WATHEN, Justice.

Defendant David Grant appeals from a conviction entered in the Superior Court

---

(Hancock County, *Smith, J.*) for gross sexual misconduct (17-A M.R.S.A. § 253(1)(A) (Supp.1989)). Defendant argues on appeal that the justice presiding at a suppression hearing (*Brody, C.J.*) erroneously failed to suppress a confession obtained by the police after he had requested the assistance of counsel. Defendant also contends that there was insufficient evidence to convict him of gross sexual misconduct. Although we reject the claim of insufficient evidence, the suppression ruling is in error and we must vacate the judgment.

The facts may be briefly summarized as follows: Defendant allegedly committed an act of gross sexual misconduct against his stepdaughter on June 30, 1987. On July 22, 1987, Officer Gilbert Jameson contacted defendant regarding his stepdaughter's allegations. Prior to any questioning, the officer read the *Miranda* warning to defendant who stated that he understood the warning and indicated that he would speak with the officer without an attorney being present. At that time defendant denied the allegations. On July 26, defendant allegedly committed an aggravated assault on his wife. On that same day, defendant was hospitalized for ingesting an overdose of sleeping pills. Officers Gilbert Jameson and Timothy Jameson attempted to question defendant in the hospital regarding the assault upon his wife. After they read defendant his *Miranda* warning, defendant said he did not want to talk with them because "he was tired." Defendant did not express a desire for an attorney. Later, when he was discharged from the hospital on that same day, the officers arrested him for assault and once again administered the *Miranda* warning. Defendant stated that he understood the warning and that "he would wait until he talked to a lawyer" before talking to the police and no questioning took place. On July 27, 1987, defendant was arraigned on the assault charge. Officer Timothy Jameson was present in court and heard defendant state that he would get his own counsel if he made bail.

After ascertaining from one of the jail turnkeys that defendant had not made bail, officer Timothy Jameson visited defendant in the jail on July 29. Defendant was brought to a squadroom and the officer described the meeting in the following terms:

Q. Did he respond to seeing you at all?

A. He knew who I was. I introduced myself again. He knew who I was.

Q. What were the first words that were spoken between the two of you?

A. I asked him if he was going to make bail.

Q. Did he respond?

A. He told me that he didn't think so.

Q. What was the next thing that was said between the two of you?

A. I asked him if he contacted a lawyer.

Q. Did he respond?

A. He told me that he hadn't and that he didn't want one.

Q. What was the next thing that was said between the two of you?

A. I just kind of looked at him and I asked him what he meant by that.

Q. He said "What do you mean?"?

A. He said that he was just going to—he told me that he was just going to let things go.

Q. What was the next thing that was said between the two of you?

A. I asked him if he wanted to speak to me concerning the events of July 25th and 26th.

Q. Did he respond to you?

A. He said he would.

Q. What was the next thing that was said?

A. He started to launch into—or started immediately to start talking about those events and I stopped him. I again advised him of his rights according to the *Miranda* warning.

At this point defendant again indicated that he understood the warning. The initial discussion concerned defendant's assault upon his wife. During the course of the interrogation, however, officer Jameson asked defendant what had happened between him and his stepdaughter. Defendant admitted that he made her perform oral sex upon him but stated that he did not remember

penetrating her vagina. A few days later, officer Jameson met with defendant again, and after repeating the *Miranda* warning, defendant repeated his admissions.

The Superior Court denied defendant's motion to suppress and found that defendant knowingly and intelligently waived his *Miranda* rights before he spoke to the officer on July 29. The court, however, did not expressly find who had initiated the discussions that resulted in defendant's admission. That admission was later received into evidence at trial and defendant was found guilty. Defendant now appeals.

Defendant contends that his statement was obtained in violation of the right to counsel which he invoked on July 26. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held that "[i]f the individual [being interrogated] states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474, 86 S.Ct. at 1628. In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Court held that "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." *Id.* at 485, 101 S.Ct. at 185. The Court has elaborated upon the rigid prophylactic rule adopted in *Edwards* in the following terms:

> First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police and, (b) knowingly and intelligently waived the right he had invoked.

*Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 492, 83 L.Ed.2d 488 (1984) (quotations omitted).

In the present case, the State acknowledges that defendant invoked his right to counsel and that the officer approached defendant in the jail and was first to speak. The State argues, however, that defendant initiated the further discussion "regarding the case" by responding that "he was just going to let things go." In effect the state argues that the officer's introductory questions did not amount to interrogation and the discussion regarding the case was instigated by the remarks of defendant. Lower courts have had great difficulty in determining whether a defendant "initiated further discussions with the police" when police conduct preceded and contributed to defendant's alleged initiating statement. For a collection of those lower court decisions *see* 1 W. LaFave & J. Israel. *Criminal Procedure* § 6.9, n. 96.2 (1984. Supp. 1989).

In a recent opinion, the Supreme Court explained the rationale underlying the *Edwards* rule in the following terms:

> [I]f a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect.

*Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 2097–98, 100 L.Ed.2d 704 (1988).

Further, the Court reemphasized the virtues of applying a bright-line rule as follows:

> [T]he "relatively rigid requirement that interrogation must cease upon the accused's request for an attorney ... has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible. This gain in specificity, which benefits the accused and the State alike, has been thought to outweigh the burdens that the decision in *Miranda* imposes on law enforcement agencies and the courts by requiring the suppression of trustworthy and highly probative evidence even though the confession might be voluntary under traditional Fifth Amendment analysis." The *Edwards* rule thus serves the purpose of providing "clear and unequivocal" guidelines to the law

enforcement profession. Surely there is nothing ambiguous about the requirement that after a person in custody has expressed his desire to deal with the police only through counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."

*Id.* 108 S.Ct. at 2098–99. (Quotations and citations omitted).

Even though the initial questions of the police officer in this case did not amount to an interrogation, that is not the inquiry. We are compelled to conclude as a matter of law that the conversation in the jailhouse took place at the behest of the police officer and was not instigated by the defendant. The officer had been informed by defendant that he did not want to answer questions until he had an attorney. By initiating a discussion concerning the matter of representation, the officer implicitly introduced the subject of further questioning. Such conduct does not square with the requirements imposed by the *Edwards* rule.[1] It cannot be said that the resulting discussion of the case was initiated by the defendant.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

1. Defendant invoked the right to counsel in addition to the right to remain silent. The fact that, when he invoked his rights, the interrogation was directed at the assault charge rather than the separate incident involving his stepdaughter is not significant. Although the "scrupulously honored" test adopted in *Michigan v.*

*Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) may permit renewed interrogation for a different crime, that rule applies to cases where only the right to silence was invoked. *See* 1 W. LaFave & J. Israel, *Criminal Procedure* § 6.9 at 537–38 (1984).