**STATE of Maine**

v.

**Charles M. MARTIN.**

Supreme Judicial Court of Maine.

Argued Sept. 5, 1990.

Decided Oct. 1, 1990.

James E. Tierney, Atty. Gen. and Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for the State.

Joseph H. Field and Mary Lou Ciolfi (orally), Loyd, Bumgardner & Field, Brunswick, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

McKUSICK, Chief Justice.

Defendant Charles Martin appeals from his murder conviction entered by the Superior Court (Cumberland County, *Lipez, J.*), pursuant to his conditional guilty plea. The issues on appeal all arise from the court's denial of defendant's pretrial motion to suppress various statements and physical evidence.[1] Finding no error in the Superior Court's ruling on the motion to suppress, we affirm.

Defendant met Vincent Irish for the first time on the evening of March 26, 1988. The two drove to a secluded spot in Windham where defendant killed Irish by shooting him in the head, beating him over the head with the gun, and finally smothering him. Defendant left Irish's body in the trunk of the car and, then, unable to get the car out of the mud, went to look for a ride. Officer Fulton was driving his cruiser along Nash Road when defendant waved him down. Fulton asked defendant what he was doing. Defendant answered that he had been hitchhiking, a car had stopped for him, and the driver had threatened him with a gun. Defendant had fled, but not before seeing a body in the back seat of the car. Considering defendant a possible witness to a crime, Fulton asked him to come to the Windham police station to give a statement. Defendant agreed, and they arrived at the station shortly after midnight. There Detective Ramsdell interviewed defendant for about an hour. No *Miranda* warnings[2] were given before or during this interview. Meanwhile the police had found the car with Irish's body. This in conjunction with defendant's answers led them to view him as a murder suspect, and they notified the Maine State Police. After his interview with Ramsdell, defendant was left alone until the Maine

---

1. Defendant makes no argument for the suppression of the physical evidence beyond the arguments he makes in connection with his statements that were not suppressed.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

State Police officers arrived and began their interview of him around 2:00 a.m. They read defendant his *Miranda* rights before they began the questioning. Defendant initially answered willingly, but then demanded an attorney. The state police nevertheless continued the interrogation for some time, ending around 4:00 a.m.[3]

Later that morning defendant was arrested and taken to the Cumberland County jail. With him in the car were Sergeant Lyons of the Maine State Police and Detective Ramsdell. Although not questioned by the officers about the crime, defendant made several incriminating comments during this ride. On arrival at the jail defendant was taken for processing to the booking room. During processing he removed a ring from his finger and placed it away from him on the counter, remarking that he would not be needing it where he was going. Without further *Miranda* warnings, the officers asked several follow-up questions. In his responses defendant made several incriminating remarks, including a statement that the ring belonged to Irish.[4] Shortly after this conversation, Lyons asked defendant if he wanted to talk to a lawyer. Defendant said that he no longer wanted to speak to an attorney. He explained that he had earlier wanted an attorney to help him keep his story straight, but now that he was under arrest he no longer cared. He indicated that he was now willing to make a confession. The officers then took defendant to the Maine State Police barracks in Scarborough. On the way, defendant was not questioned but he spontaneously offered more incriminating statements. The trio arrived at the barracks around 11:15 a.m. Lyons read defendant his *Miranda* rights. Defendant then gave a full confession to the murder on videotape. After the interview, defendant, still accompanied by Lyons and Ramsdell, was given lunch. During lunch, he again asked about the death penalty in Maine and offered that he "would have done it again" if he had not gotten caught.

Defendant entered a plea of not guilty to the murder charge and moved to suppress all statements and physical evidence obtained from him. The court entered an order denying suppression of defendant's statements except those made at the Windham police station to state police officers after defendant's request for an attorney and those made at the Cumberland County jail in answer to the officers' questions about Irish's ring. The court entered a second, later order denying suppression of the physical evidence. Defendant then changed his plea to a conditional guilty plea and, after being sentenced to 60 years imprisonment, appealed the orders denying his suppression motion.

Each of the three issues raised by defendant in the Superior Court and again on appeal is a factual question. First, assuming that no probable cause to arrest existed, did Officer Fulton seize or arrest defendant on Nash Road, compelling the exclusion of all statements and physical evidence obtained from him? Second, at what point was he in custody for purposes of *Miranda?* Third, must all the statements defendant made after his initial assertion of his *Miranda* right to counsel be suppressed because obtained either without his waiver of that right or as the result of renewed interrogation by the police? On each of these questions, the State had the burden of proof by a preponderance of the evidence. *See State v. Bleyl,* 435 A.2d 1349, 1356 (Me.1981) (seizure); *State v. Hewes,* 558 A.2d 696, 698 (Me.1989) (custody); *State v. Caouette,* 446 A.2d 1120, 1122 (Me.1982) (waiver of *Miranda* rights). As already noted, the motion justice found the State had successfully sustained that burden with respect to all but two portions of defendant's statements. On appeal the motion justice's findings of fact will be sustained unless clearly erroneous. *See State v. Adams,* 457 A.2d 416, 417 (Me.1983).

First, defendant argues that he was illegally seized or arrested on Nash

---

3. The Superior Court suppressed all statements that defendant made at the Windham police station after his request for an attorney.

4. The Superior Court suppressed defendant's statements responding to the officers' questions about Irish's ring.

Road, thus compelling the exclusion of all statements and physical evidence taken later from him. A person is seized within the meaning of the Fourth Amendment if he reasonably believes he is not free to leave. *See State v. Bleyl*, 435 A.2d at 1356. There is ample evidence in the record to support the motion justice's determination that defendant was not seized on Nash Road. Defendant, looking for a ride, waved down the police car, a marked cruiser, on Nash Road. Following the conversation between Officer Fulton and defendant, the officer asked, not ordered, defendant to accompany him to the Windham police station to make a statement. At no time during their conversation was defendant under any physical restraint or told that he was under arrest. Defendant later explained that he had made up the story about the gun-wielding stranger in a car in order to keep the officer from going farther down Nash Road and discovering the car with Irish's body. When this scheme worked and Fulton had asked defendant to go to the police station to make a statement as a witness, defendant had gone willingly.

 Second, defendant argues that he was in custody during the entire interview with Detective Ramsdell at the Windham police station and was therefore entitled to be advised of his *Miranda* rights. Custody for the purposes of *Miranda* exists if a reasonable person would believe himself to be in custody and would feel himself restrained to the degree associated with a formal arrest. *See State v. Gardner*, 509 A.2d 1160, 1163 (Me.1986). The motion justice's finding that defendant was not in custody at any time before or during his initial interview by Ramsdell at the police station is supported by the record. Defendant himself had provided the story that caused him to be brought to the police station as a possible witness to a crime. Once at the station, defendant thought he would be able to leave after giving a statement to the police. He telephoned his mother just before the interview with Detective Ramsdell and told her that he was going to be at the station for a while and would need a ride home later.

 Finally, defendant argues that all the statements he made after he invoked his *Miranda* right to counsel must be suppressed because the police officers initiated all further conversations with him. Once a suspect asserts his right to counsel, authorities may not question him further unless he makes a knowing and voluntary waiver of his *Miranda* rights and "initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); *State v. Grant*, 571 A.2d 1203, 1205–06 (Me.1990). The motion justice's determination, that the State met its burden of proof to show that defendant's subsequent statements were made voluntarily and after he and not the police had initiated the further discussions, has a rational basis in the record. During the drive from the Windham police station to the Cumberland County jail, Detectives Ramsdell and Lyons discussed in a general way the status of an ongoing murder investigation, Ramsdell at one point asking Lyons about the car found on Nash Road. Defendant, overhearing the officers' conversation, concluded that the police had found the car with Irish's body, confirming his earlier belief that he was "cooked." He asked the officers if Maine had the death penalty for murder. On being told that there was no death penalty in Maine, defendant commented that it was nice to know that the officers would be paying for his care for the rest of his life. A few minutes later, defendant asked Lyons who decides whether to charge for murder or manslaughter. Defendant's questions were an attempt on his part to find out what might happen to him, and not, as defendant now would have it, responses to disguised interrogation by the police.

The statements defendant made concerning the ownership of the ring at the Cumberland County jail were correctly suppressed because the police obtained them after defendant had asked for a lawyer and without his waiver of that right to counsel. Soon after those comments, however, the officers did again give defendant his *Miranda* warnings, and it was after these

renewed warnings that defendant said he was ready to talk to them without an attorney. At the State Police barracks, just before giving his videotaped confession, defendant made clear that he understood his right to counsel and repeated his explanation as to why he no longer wanted to talk to a lawyer. Defendant's later comments at lunch to the two officers were made after having received *Miranda* warnings both before and after his videotaped confession. On this record the motion justice was well justified in finding that defendant's answers and comments were all voluntary and not the result of interrogation by the officers.

Because the evidence provides a rational basis for each of the motion justice's rulings on the suppression of defendant's statements, the motion justice's determinations must be sustained on appeal.

The entry is:

Judgment affirmed.

All concurring.