STATE of Maine

v.

**Wesley KNIGHT, Jr. and Kevin Knight.**

Supreme Judicial Court of Maine.

Argued March 15, 1993.

Decided April 27, 1993.

Donald W. Macomber (orally), Asst. Atty. Gen., Augusta, for State.

Marshall T. Carey (orally), Bangor, for Kevin Knight.

Steven C. Petersen (orally), Camden, for Wesley Knight.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, COLLINS, RUDMAN and DANA, JJ.

COLLINS, Justice.

Wesley Knight, Jr. and Kevin Knight appeal from the judgment of conviction entered in the Superior Court (Waldo County, *Kravchuk, J.*) on a jury verdict finding them guilty of "intentional or knowing" murder, 17–A M.R.S.A. § 201(1)(A) (1983).[1] On appeal, the Knights argue, *inter alia,* that the trial court committed reversible

---

1. 17–A M.R.S.A. § 201(1)(A) provides that, "A person is guilty of murder if he intentionally or knowingly causes the death of another human being."

error by: (1) indicating *in limine* that the defense could not impeach Robert Dewalt, one of the State's key witnesses, with evidence of his alleged satanism and past threats to kill others; and (2) allowing the State to impeach two of its witnesses with prior inconsistent statements without a limiting instruction on hearsay. Kevin also argues that the trial court erred in denying his motion to suppress oral statements that he made to police investigators while in custody at the Knox County jail. Wesley, in a related argument, argues that the trial court erred by refusing to sever his trial from Kevin's trial.[2] We affirm the judgment.

### *Factual & Procedural Background*

On September 24, 1990, Wesley and Kevin, with the help of David Frost and Robert DeWalt, killed Timothy Pinkham by tying a rope around his neck and dragging him into a pond in Northport.

On November 27, 1990, the Waldo County Grand Jury returned a one-count indictment charging Robert DeWalt, Kevin Knight, Wesley Knight, Jr., and David Frost with murder. The court subsequently ordered that the pending cases against co-defendants DeWalt and Frost be severed from each other and from the pending case against the Knight brothers. Following trial, the jury found the Knights guilty of murder. The Knights filed timely appeals.

### I.

Prior to trial, the Knights sought an *in limine* decision by the court to establish the extent to which they would be allowed to impeach Robert DeWalt, who had agreed to testify for the State, by introducing evidence that he: (1) participated in satanism and publicly referred to himself a Sabian, son of the devil; and (2) had threatened to kill people other than the victim. The trial court indicated, as a preliminary matter, that the evidence in question should not be mentioned in the Knights' opening statements, but the court made clear that it would consider any evidence that might become relevant as the trial developed.

The Knights, on appeal, characterize the court's preliminary decision as a final ruling and argue that the decision constitutes an abuse of discretion.

■■■ The Knights' claims were not properly preserved for appellate review, since they never attempted to introduce the evidence in question at trial, and we review only for obvious error affecting substantial rights. *See State v. Ayers*, 468 A.2d 606, 609–10 (Me.1983) (defendant's request for an *in limine* ruling on the admissibility of certain evidence was not a direct offer of proof, thus making the ruling unreviewable on appeal); *see also* Field & Murray, *Maine Evidence*, § 103.7 at 1–29 (1992) ("[T]he fact that the trial court has acted on a motion *in limine* does not relieve counsel of making objections and offers of proof at the appropriate points in the trial in order to make a record and preserve points of error for appeal."). There was no obvious error.

### II.

■■■ As part of its case-in-chief, the State offered the testimony of the Knights' sister, Teresa Knight, and Wesley's girlfriend, Lisa, to implicate the Knights in Pinkham's murder. During the testimony, the witnesses made statements under oath that were inconsistent with prior statements given to the authorities. The State then proceeded to impeach these witnesses with these prior inconsistent statements. The Knights argue that these prior inconsistent statements were hearsay, and that their admission without limiting instruction unfairly prejudiced the Knights and constituted obvious error. Neither of the Knights, however, objected to the use of the prior inconsistent statements nor did they request a limiting instruction. *See State v. Rogers*, 389 A.2d 36, 38 (Me.1978) (absent a request for a limiting instruction, we can assume that counsel concluded that a limiting instruction would have overemphasized the importance of the evidence and decided to forgo the request for strategic reasons); Field & Murray, *Maine Evi-*

---

**2.** The Knights' other contentions are without merit and will not be addressed.

*dence*, § 105.2 at 1–47 (1992) (it is the obligation of counsel to request a limiting instruction). We find no obvious error. M.R.Evid. 103(d).

### III.

 On March 25, 1991, Kevin filed a pretrial motion to suppress three statements made by him to the police on September 28, 1990. In support of the motion, Kevin alleged that these statements were obtained illegally, involuntarily, and in violation of his constitutional rights. The motion also stated that:

> [Kevin] was interrogated by Maine State Police Detective Bryant White at the Knox County Jail following his arrest on September 28, 1990, and that after being read the ... *Miranda* rights [Kevin] requested to talk with an attorney before responding to any questioning. After a delay of approximately 40 minutes, during which [Kevin] was neither provided with counsel [nor] again furnished with *Miranda* warnings, police interrogation was again renewed.

On June 21, 1991, a hearing was held on this motion (*MacInnes, A.R.J.*). The trial court specifically found that the meeting in question occurred at Kevin's request and that Kevin's statements were made knowingly, intelligently and voluntarily. The court accordingly denied the motion.

On appeal, Kevin contends that the evidence provided at the suppression hearing did not satisfy the test of *State v. Libby*, 546 A.2d 444, 448 (Me.1988). The suppression court is free, however, to reject the testimony of the defendant, and it apparently did so. *See State v. Jalbert*, 537 A.2d 593, 594 (Me.1988) (motion justice free to reject defendant's bald assertion). In *State v. Martin*, 580 A.2d 678 (Me.1990), we held that the State has the burden of proving by a preponderance of the evidence that the defendant initiated further discussion with the police about the subject of the interrogation and that the defendant knowingly, intelligently, and voluntarily waived his right to have counsel present during questioning. *Id.* at 680. On appeal, a trial court's findings of fact will be sustained unless clearly erroneous. *Id.* Detective White's testimony at the suppression hearing supports the court's findings. Accordingly, the court's findings are not clearly erroneous and will not be disturbed on appeal.

### IV.

Wesley next contends that the trial court's refusal to sever his trial from Kevin's constitutes reversible error.

The decision on whether to sever a trial of one defendant from the trial of another lies in the sound discretion of the trial court. *State v. Pierce*, 474 A.2d 182, 184 (Me.1984). "In making a determination on a Rule 8(d) motion, the court must balance the general policy in favor of joint trials against the potential prejudice to a defendant which may result." 1 Cluchey & Seitzinger, *Maine Criminal Practice*, § 8.9 at III–65 (1992).

 Wesley presented no evidence of prejudice attributable to him by his brother's statement to Detective White. In *State v. Smith*, 415 A.2d 553 (Me.1980) we stated:

> The party moving for severance bears a significant burden: "The appellant must make a clear showing of facts presented to the trial justice prior to trial which would have caused [the trial justice] to believe that the ... [appellant] would be prejudiced by a joint trial." ... Vague generalizations of potential prejudice are insufficient to warrant severance.

*Id.* at 556 (quoting *State v. Millet*, 392 A.2d 521, 528 (Me.1978)) (omissions in the original).

Wesley argued essentially that Kevin's statements wherein Kevin accepted total responsibility for the killing would "somehow" be viewed by the jury as probative of a conspiracy between the Knights. Wesley's argument, on its face, fails to meet the standard enunciated in *Smith*.

 Finally, with regard to Wesley's argument that the admission of Kevin's statements violated the rule of *Bruton v.*

*United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), we have already addressed this issue by noting that:

> the co-defendant's statements were not incriminating but were in fact, exculpatory. Such a statement clearly does not infringe on a defendant's right to confrontation.

*State v. Peaslee,* 388 A.2d 910, 912 (Me. 1978).

The entry is:

Judgment affirmed.

All concurring.