2004 ME 126

**STATE of Maine**

v.

**Brandon THONGSAVANH.**

Supreme Judicial Court of Maine.

Argued: June 8, 2004.

Decided: Oct. 7, 2004.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Attorney General (orally), Lisa Marchese, Asst. Attorney General, Augusta, for State.

William Maselli, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Brandon Thongsavanh appeals from a judgment of conviction entered in the Superior Court (Androscoggin County, *Gorman, J.*) after a jury found him guilty of murder pursuant to 17–A M.R.S.A. § 201(1) (1983)[1] contending, inter alia, that the court acted beyond its discretion in admitting highly prejudicial character evidence that had very little probative value in violation of Maine Rules of Evidence 403 and 404, and in failing to grant a mistrial after the prosecutor committed misconduct by repeatedly offering her personal opinion on his credibility and guilt during opening statements and closing arguments in violation of Maine Bar Rule 3.7(e)(2)(v). Because we conclude that the probative value of the phrase written on the T-shirt Thongsavanh wore the night of the murder was substantially outweighed by the danger of unfair prejudice, we vacate the judgment and remand for a new trial.

## I. BACKGROUND

[¶ 2] On March 3, 2002, a street fight in Lewiston ended in the fatal stabbing of Morgan McDuffee. Upon investigation, the police came to believe that Thongsavanh was involved in the murder. They brought him in for an audiotaped initial interview, following which they arrested him and then videotaped a second interview. Thongsavanh was later indicted and charged with McDuffee's murder.

[¶ 3] Before the jury was sworn on the first morning of trial, Thongsavanh moved in chambers to exclude evidence of the highly inflammatory phrase "Jesus is a cunt" written on the T-shirt he wore the night of the murder. The State argued that the phrase helped several witnesses place Thongsavanh at parties earlier in the night, and helped show that he handed over a different shirt to police when they asked for the clothing he wore that evening.[2] Although on both the audio and videotapes Thongsavanh claimed otherwise, at trial, his attorney did not dispute that he attended the parties on the night of the murder and was willing to concede that he handed over a different shirt than the one he had worn that night. Therefore, Thongsavanh argued that the phrase had very little, if any, probative value, and it was highly probable that the phrase would unfairly prejudice the jury against him.[3] In support of his claim of unfair prejudice Thongsavanh presented the grand jury transcript showing that one grand juror said, "[a]nybody that's wearing a T-shirt like that has some serious problems." The State conceded that the phrase was "explosive." There can be little doubt that the phrase on the T-shirt would arouse the passions of most jurors and therefore presented a substantial danger of unfair prejudice.

[¶ 4] The court initially appeared prepared to agree with Thongsavanh, stating

1. Title 17–A M.R.S.A. § 201(1) (1983) has since been amended by P.L. 2001, ch. 383, § 8 (effective Jan. 31, 2003), *codified at* 17–A M.R.S.A. § 201(1)(A) and (B) (Supp.2003).

2. In its arguments in chambers the State also asserted that the phrase would demonstrate "who this defendant is, and the jury has the right to know that." The State made repeated arguments to this effect, and the record plainly reflects the fact that the State believed the phrase revealed some traits of Thongsavanh's character.

3. Thongsavanh objected pursuant to Maine Rules of Evidence 403 and 404. Rule 403 excludes relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice ...." M.R. Evid. 403. Rule 404 excludes "[e]vidence of a person's character or a trait of character ... for the purpose of proving that the person acted in conformity therewith on a particular occasion ...." M.R. Evid. 404(a).

"I have serious concerns that allowing the State to present testimony with the specific language on the T-shirt would be so offensive to the members of the jury that they would allow that to play a part in deciding this case." The State strongly protested and indicated that because the jury had not been sworn, it was prepared to take an immediate interlocutory appeal. The court, without explaining why, announced that the T-shirt would be admissible.[4] The State then highlighted the phrase a few moments later during opening statements, and used or elicited the phrase five times in testimony.

[¶ 5] Other issues raised on appeal include the following: (1) the prosecutor's references to Thongsavanh's character and credibility in the opening statement;[5] (2) the admission into evidence of a color photograph of Thongsavanh in an orange jumpsuit instead of a black and white photograph;[6] (3) the redacted admission of video and audiotape interrogations; and (4) the State's closing argument which repeatedly referred to Thongsavanh's lies to the police.[7] We do not address these issues.

## II. DISCUSSION

■ [¶ 6] We only address the evidentiary dispute regarding the T-shirt. We review a trial court's decision to admit evidence pursuant to Rule 403 to determine if it exceeds the bounds of the court's discretion. *State v. Turner*, 2001 ME 44, ¶ 5, 766 A.2d 1025, 1027.

■ [¶ 7] Rule 403 requires the trial court to weigh the probative value of evidence offered by one party against the danger the evidence will unfairly prejudice the other party. M.R. Evid. 403. The Rule does not protect a party from all prejudice, but only serves as a guard against *unfair* prejudice:

It should be emphasized that prejudice, in this context, means more than simply

---

4. We have recently suggested in another context that when a court is required to weigh the probative value of evidence against the danger of unfair prejudice it should articulate its rationale on the record. *See State v. Braley*, 2003 ME 125, 834 A.2d 140 (requiring an articulation of the Rule 609(a) weighing process required for the admission of a prior criminal history). We urge the trial courts to do so as well when applying the balancing test in Rule 403. By urging such an articulation we do not mean to suggest that in this case a court could properly conclude that the phrase on the T-shirt should be brought to the attention of the jury.

5. The Maine Bar Rules forbid attorneys from asserting "a personal opinion as to the justness of a cause, as to the credibility of a witness ... or as to the guilt or innocence of an accused." M. Bar R. 3.7(e)(2)(v). These principles apply with particular force to the prosecutor who, as the representative of the people, is bound not only to zealously advocate her position, but also to promote justice and help ensure that defendants receive a fair trial. *See* M. Bar R. 3.7(i).

6. We have established a three-part test governing the admission of booking photographs:

(1) the prosecution must show a demonstrable need to introduce the photograph; (2) the photograph, if shown to the jury, must not imply that the defendant has a prior criminal record; and (3) the introduction at trial must not draw particular attention to the source or implications of the photograph.

*State v. Robbins*, 666 A.2d 85, 88 n. 7 (Me. 1995) (citation omitted). Thongsavanh contends that the photograph in this case fails the first two parts of the test.

7. The State may suggest that a defendant lied as long as the evidence justifies that opinion and the prosecutor couches the commentary in terms linking the accusation to the evidence. *State v. Harnish*, 560 A.2d 5, 9 (Me. 1989); *see also* Robert W. Clifford, *Identifying and Preventing Improper Prosecutorial Comment in Closing Argument*, 51 Me. L. Rev. 242, 263–64 (1999).

damage to the opponent's cause. A party's case is always damaged by evidence that the facts are contrary to his contentions; but that cannot be ground for exclusion. What is meant here is an undue tendency to move the tribunal to decide on an improper basis, commonly, though not always, an emotional one. *State v. Hurd*, 360 A.2d 525, 527 n. 5 (Me.1976) (quotations omitted).

■ [¶ 8] There can be little doubt that disclosure of the phrase on Thongsavanh's T-shirt presented an extremely high danger of unfair prejudice.[8] It is, in fact, difficult to conceive of a more inflammatory and prejudicial expression than the one at issue here. As evidence of this, the defense presented the comments of a grand juror indicating the phrase impacted his decision, and the State conceded in chambers that the words were "explosive." The only question, then, is whether the evidence had enough probative value to justify its admission despite the danger of prejudice.

[¶ 9] The State contends the phrase helped some witnesses place Thongsavanh at various parties on the night of the murder. It further contends that the phrase is evidence that he turned over a different shirt to police when they asked him for his clothes. These arguments are undercut, however, by the fact that, at trial, Thong-

savanh did not dispute that he attended the parties, and that the shirt he gave to the police was a different shirt. Moreover, only one of the four witnesses who repeated the phrase at trial did not know Thongsavanh by sight. As Thongsavanh suggested in chambers, whatever slight probative value the shirt might have had, the State could have made the same point by paraphrasing the phrase to reduce the danger of prejudice. The State was obviously more than capable of doing so as it repeatedly referred to the "Jesus shirt" after the jury heard the literal phrase six times.

[¶ 10] Instead, the State highlighted the literal phrase early in its opening statement, and went on to use or elicit it five more times in testimony. In these circumstances, the phrase's admission was a fundamental injustice. When a jury begins a trial with a deep antipathy for the defendant, it is difficult to ensure a fair trial. This is precisely the injustice Rule 403 is intended to prevent. We therefore vacate the conviction and remand for a new trial.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

---

8. As an initial matter, the State contends that Thongsavanh failed to preserve for appeal the issue of the offensive T-shirt because he did not raise an objection each time the phrase was mentioned during the trial. The State relies primarily on two cases in which we held that a defense motion in limine failed to preserve an issue when the defendant did not later object to the admission of the evidence at trial. *State v. Thomes*, 1997 ME 146, ¶ 7, 697 A.2d 1262, 1264; *State v. Knight*, 623 A.2d 1292, 1293 (Me.1993). In both cases, however, the trial court made it clear that its ruling on the preliminary motions did not entirely resolve the issues. In *Knight*, the

court made it clear that its ruling was not final, and in *Thomes* the court admitted evidence for a limited purpose and the defendant did not later object that the evidence presented at trial exceeded that purpose. *Knight*, 623 A.2d at 1293; *Thomes*, 1997 ME 146, ¶¶ 3–4, 697 A.2d at 1264. Therefore, those cases present a very different scenario than the instant case, in which the court unequivocally admitted the phrase for any purpose just moments before the State highlighted it in its opening statement. Thongsavanh's objection served the underlying purposes of the preserved error rule, and the issue is thus preserved for appeal.