2006 ME 5

**STATE of Maine**

v.

**Gregory ERSKINE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 29, 2005.

Decided: Jan. 19, 2006.

---

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen., Fernand LaRochelle, Asst. Atty. Gen., Augusta, for State.

Robert J. Ruffner, Esq., Vincent Kantz & Ruffner, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CALKINS, J.

[¶ 1] Gregory Erskine appeals from a judgment of conviction of murder, 17-A M.R.S.A. § 201 (Supp.2005), entered after a jury trial in the Superior Court (Cumberland County, *Crowley, J.*).[1] Erskine contends that the evidence was insufficient to convict him of murder and that the court erred when it failed to require the jury to decide unanimously whether he committed intentional or knowing murder or whether he committed depraved indifference murder. Erskine also appeals the sentence of thirty-seven years imprisonment, arguing that the sentence was unconstitutional as a violation of the Separation of Powers Clause of the Maine Constitution in that the court impermissibly elevated the sentence. We affirm the conviction and the sentence.

---

**1.** Erskine was also convicted of violation of condition of release (Class E), 15 M.R.S.A. § 1092 (2003), but he has not appealed that conviction.

## I. BACKGROUND

[¶ 2] On May 13, 2004, Lisa Deprez and Erskine were together at a bar in spite of the fact that Erskine was subject to a preconviction bail condition that he have no contact with Deprez. Another bail condition prohibited him from entering her residence. Nonetheless, Erskine went to Deprez's apartment where, around 8:00 P.M., neighbors heard loud noises and a voice asking for help coming from the apartment. The neighbors called the police, who on their arrival heard similar noises from the apartment and forcibly entered it. Erskine ran from a closet and into the street, where he was caught by the police.

[¶ 3] The police found Deprez in a bedroom in her apartment, lying on the floor, with a blanket over her. After the blanket was removed, blood was visible on her hands, face, and hair. Deprez did not respond, and an ambulance took her to the hospital. Deprez died from lack of oxygen to her brain and multiple traumatic injuries.

[¶ 4] When the police examined Deprez's apartment after she was taken to the hospital, they found blood on a pillow in the bedroom and on the floor. They also found blood in a nearby bathroom where the toilet tank was cracked and leaking.

[¶ 5] When Erskine was interviewed by the police and read his *Miranda* rights, he responded that he had tried to hurt Deprez and that he did not have any rights. He admitted that he and Deprez had been arguing in her apartment and that he had put his hand over her mouth to keep her from yelling. He said he may have given her a bloody nose. He said he knew he was not supposed to be in her apartment and that was why he hid in the closet and ran out when the police came. There were blood stains on his hands.

[¶ 6] After Deprez died and the autopsy had been done, police and the medical examiner went to Deprez's apartment to look for an object that could have caused a crescent-shaped injury to the back of her head. The police found a hammer that the medical examiner opined could have caused the head injury, which injury could have been fatal by itself. Testing of the hammer revealed Deprez's DNA on its head.

[¶ 7] Erskine was indicted and tried for the murder of Deprez. The court instructed the jury that the State had to prove beyond a reasonable doubt that Deprez was dead; that Erskine caused her death; and that Erskine caused her death by any one of three alternatives: intentionally, knowingly, or by engaging in conduct which manifests a depraved indifference to the value of human life. The court defined the terms "intentionally," "knowingly," and "engaging in conduct which manifests a depraved indifference to the value of human life." The court also instructed the jury on manslaughter, aggravated assault, and assault. Erskine did not object to the instructions. During deliberations, the jury requested further instructions on the definitions of murder and manslaughter. After conferring with counsel and without an objection, the court reinstructed the jury on murder and manslaughter.

[¶ 8] Following further deliberations, the jury returned a verdict of guilty of murder. A sentencing hearing was held after the court received reports and sentencing memoranda. The court sentenced Erskine to thirty-seven years imprisonment.

## II. DISCUSSION

### A. Sufficiency of the Evidence

[¶ 9] When a criminal defendant contends that the evidence was insufficient to support the conviction, "we view the

evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *State v. Black*, 2000 ME 211, ¶ 14, 763 A.2d 109, 113.

[¶ 10] Utilizing this standard of review, Erskine's conviction must be affirmed. There was no doubt that Deprez was dead. The evidence was also sufficient to demonstrate beyond a reasonable doubt that Erskine caused her death. She died from injuries that occurred during a period of time when Erskine was with her and during an altercation with him. She was heard asking for help, and Erskine later stated that he had tried to hurt her. He had blood on his hands.

[¶ 11] As to the requirement that Erskine caused Deprez's death intentionally, knowingly, or by engaging in conduct that manifests a depraved indifference to the value of human life, Erskine's own statements to the police indicate that he intended to hurt Deprez and that he acted intentionally and knowingly in giving her a bloody nose. He admitted holding his hand over her mouth until she stopped yelling. The evidence was more than sufficient for the jury to infer that the hammer was the instrument that caused Deprez's head injury and to infer that Erskine used the hammer to hit Deprez on the head. From those inferences, the jury was able to draw the additional inference that Erskine acted intentionally or knowingly to cause Deprez's death. The same evidence supports a finding that Erskine acted with depraved indifference in causing Deprez's death.[2]

**B. Jury Instruction**

[¶ 12] When a defendant challenges a jury instruction on appeal, and there was no objection to the instruction at trial, we review the instruction for obvious error. *State v. Kirk*, 2005 ME 60, ¶ 3, 873 A.2d 350, 351; M.R.Crim. P. 52(b). Erskine now contends that his rights under the Due Process Clauses of the United States and Maine Constitutions were violated when the court failed to instruct the jury that a verdict of murder required unanimous agreement on whether Erskine acted intentionally, knowingly, or with depraved indifference. To meet the obvious error standard, we must be convinced that the court's failure to instruct was error, and that it was an error that deprived Erskine of a fair trial or resulted in a serious injustice. *See State v. Cleaves*, 2005 ME 67, ¶ 10, 874 A.2d 872, 873–74.

[¶ 13] The court did not err in failing to instruct the jury that it must agree unanimously on one of the alternative theories, that is, whether Erskine acted intentionally, knowingly, or with depraved indifference. The Supreme Court has held that a jury is not required to reach unanimous agreement on preliminary factual issues that underlie a general verdict of murder. *Schad v. Arizona*, 501 U.S. 624, 631–32, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991). Although a jury must reach unanimous agreement that each element of an offense has been proven, *see Richardson v. United States*, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999), a jury does not have to agree unanimously on the means of satisfying the *mens rea* element, *Schad*, 501 U.S. at 632, 111 S.Ct. 2491. Relying on *Schad*, we held, with regard to the offense of unlawful sexual contact, that a jury did not have to agree unanimously

---

**2.** At the sentencing hearing, the trial court stated the evidence was most consistent with depraved indifference murder.

on whether the defendant acted for the purpose of arousing or gratifying sexual desire, or for the purpose of causing bodily injury or offensive physical contact. *State v. St. Pierre,* 1997 ME 107, ¶¶ 5–7, 693 A.2d 1137, 1139.

[¶ 14] In Maine, murder is a single offense, even though there are alternative theories for its commission. *State v. Dechaine,* 572 A.2d 130, 136 (Me.1990). The statute provides, in part:

> 1. A person is guilty of murder if the person:
>
> A. Intentionally or knowingly causes the death of another human being; [or]
>
> B. Engages in conduct that manifests a depraved indifference to the value of human life and that in fact causes the death of another human being[.]

17-A M.R.S.A. § 201(1)(A), (B).

[¶ 15] Similarly, the Arizona statute at issue in *Schad* defined first-degree murder as a murder committed with premeditation or committed during a felony, *Schad,* 501 U.S. at 628, 111 S.Ct. 2491 and the Arizona Supreme Court held that murder was "one crime regardless whether it occurs as a premeditated murder or a felony murder," *id.* at 629, 111 S.Ct. 2491 (quoting *State v. Schad,* 163 Ariz. 411, 788 P.2d 1162, 1168 (1989)).

[¶ 16] The issue for decision in *Schad* was whether Arizona's choice to define murder as a single crime with alternative means of satisfying the state of mind element, thereby not requiring unanimous jury agreement on a particular state of mind, violated the Due Process Clause. *Id.* at 637. The Due Process Clause requires some specificity in the definition of crimes and, therefore, it places some limits on a state's ability to define crimes and elements of crimes. *Id.* at 632. When a

state defines a crime and permits alternative means or theories of committing the crime, the differences between the means or theories must not be so material as to, in fact, be separate offenses. *Id.* at 633. There is a "point at which differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the Constitution requires to be treated as separate offenses." *Id.* The Court acknowledged that it was impossible to describe "any single analytical model for determining when two means are so disparate as to exemplify two inherently separate offenses." *Id.* at 643. However, two mental states that "reasonably reflect notions of equivalent blameworthiness or culpability" may suffice as alternative means. *Id.* Because felony murder is not always the moral equivalent of premeditated murder, the question in *Schad* became "whether felony murder may ever be treated as the equivalent of murder by deliberation," and the Court concluded that "such equivalence could reasonably be found." *Id.* at 643–44.

[¶ 17] Erskine argues that the application of *Schad* is limited to statutes where there are alternative means of satisfying the mental state element. He contends that because the depraved indifference theory of murder in the Maine statute does not require a mental state, *see State v. Dodd,* 503 A.2d 1302, 1305 (Me.1986), the holding of *Schad* is not applicable. His argument is not persuasive.

[¶ 18] Just as Arizona determined that the mental states of premeditated murder and felony murder were equally blameworthy states of mind, *Schad,* 501 U.S. at 640, 111 S.Ct. 2491 we have recognized that depraved indifference murder is equally as blameworthy as intentional and knowing murder even though depraved indifference

murder does not require a mental state, *State v. Reardon,* 486 A.2d 112, 120 (Me. 1984). We said that the "death-producing conduct which manifests a depraved indifference to the value of human life ... is so highly charged with death-producing potential that it merits punishment in equal degree with an intentional or knowing homicide." *Id.*

[¶ 19] Thus, the alternative theories of committing murder, through either intentionally or knowingly causing the death of another or by engaging in conduct that manifests a depraved indifference to the value of human life and that in fact causes the death of another, are permissible alternatives and not separate offenses. For this reason, the Due Process Clauses do not require the jury to settle unanimously on one of the alternatives. The trial court did not commit error in failing to instruct the jury that it had to unanimously agree on one of the alternative theories of committing murder.

C. Sentence

[¶ 20] Erskine sought leave to appeal his sentence pursuant to 15 M.R.S.A. § 2151 (2003), and his request was denied. That denial is "final and subject to no further review." 15 M.R.S.A. § 2152 (2003). However, the legality of a sentence may be attacked on direct appeal, *State v. Hodgkins,* 2003 ME 57, ¶ 5 n. 3, 822 A.2d 1187, 1190–91, if "the illegality appears plainly in the record," *State v. Ricker,* 2001 ME 76, ¶ 18, 770 A.2d 1021, 1026–27.

[¶ 21] A person convicted of murder "shall be sentenced to imprisonment for life or for any term of years that is not less than 25." 17–A M.R.S.A. § 1251 (Supp. 2004). On its face, a sentence of thirty-seven years imprisonment for murder comes within the authorization of the sentencing statute.

[¶ 22] When the court sentenced Erskine it followed the statutory requirements. First, it determined the basic sentence by considering the particular nature and seriousness of the offense, and second, it determined the maximum sentence by considering all other relevant factors, including the aggravating and mitigating factors. 17–A M.R.S.A. § 1252–C(1), (2) (Supp.2005). The court set thirty years as the basic sentence and increased it by seven years to arrive at the maximum sentence. The fact that Erskine had been released on bail for charges of terrorizing and criminal threatening at the time of the murder and the fact that the bail conditions prohibited him from having contact with Deprez, formed the basis for the court's increase from the thirty-year basic sentence to the thirty-seven-year maximum.

[¶ 23] Erskine argues that, in essence, the court sentenced him to seven years for violating his bail conditions and made that seven-year sentence consecutive to a murder sentence of thirty years. Because the crime of violation of condition of release is a Class E offense, 15 M.R.S.A. § 1092 (2003), and carries with it a maximum sentence of six months, 17–A M.R.S.A. § 1252(2)(E) (1983), Erskine contends that the court violated the Separation of Powers Clause, ME. CONST. art. III, § 2, by establishing a different sentence for violating bail conditions than authorized in the statute.

[¶ 24] Erskine's argument is without merit. The second step of the sentencing statute allows for the consideration of all relevant factors. 17–A M.R.S.A. § 1252–C(2). A person's criminal history is a relevant factor. When a court increases a basic sentence because of a defendant's prior conviction, the court is not restricted to whatever term of years

that defendant could have received for the prior offense. Likewise, when a court increases a basic sentence because a defendant violated bail conditions, it is not restricted to the term of years that could be imposed if the defendant were convicted of the offense of violation of condition of release.

[¶ 25] Whether a defendant was on probation or was released on bail at the time of the offense for which the defendant is being sentenced is a relevant factor in the second step of the sentencing analysis. The particular conditions of probation or bail that a defendant violated and the relationship of those conditions to the offense for which the defendant is being sentenced are all important considerations. Erskine suggested that the appropriate way to account for the violation of the bail conditions would be to impose a six-month sentence for that offense. The court rejected that suggestion and stated: "I don't believe in this case that imposing a consecutive maximum sentence for a Class E violation of bail condition properly weighs the seriousness of that violation. That violation is intertwined with the murder and is a very substantial aggravating factor." We agree with the court's assessment. These were not boilerplate conditions that Erskine violated, nor were they conditions unrelated to the murder. These involved the very victim that Erskine murdered. The increase in the basic sentence of thirty years to the maximum sentence of thirty-seven years was not illegal.

The entry is:

Judgment of conviction and sentence affirmed.