2010 ME 125

**STATE of Maine**

v.

**Police ABODA.**

Supreme Judicial Court of Maine.

Argued: Sept. 16, 2010.
Decided: Nov. 30, 2010.

Stephanie Anderson, District Attorney, Deborah A. Chmielewski, Assist. Dist. Atty. (orally), Prosecutorial District No. Two, Portland, ME, for the State.

Robert A. Levine, Esq. (orally), Portland, ME, for Police Aboda.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1]   Police Aboda appeals from a judgment of conviction of gross sexual assault (Class A), 17–A M.R.S. § 253(1)(A) (2009), entered on the Unified Criminal Docket (Cumberland County, *MG Kennedy, J.*) after a jury trial.  The State offered evidence that Aboda, with another man, forced a woman to submit to sex with Aboda as a result of compulsion.  Aboda argues that the law's definition of "compulsion" is internally inconsistent and unconstitutionally vague because the statute allows for a finding of compulsion when the alleged victim is "unable to physically repel the actor," *see* 17–A M.R.S. § 251(1)(E) (2009), but the same statute provides that there is "no duty upon the victim to resist the actor," *id.*  The crux of Aboda's argument is that an actor cannot know that a victim is unable to physically repel the actor when the victim offers no physical resistance.  Because we conclude that an actor can, without physical resistance on the part of the victim, reasonably understand whether he or she has used or threatened the amount of force required to physically overpower the other person, we hold that the plain language of the statute is not internally inconsistent and is not unconstitutionally vague, either facially or as applied to Aboda.  We affirm the conviction.

## I.  BACKGROUND

[¶ 2]   Viewing the evidence presented at trial in the light most favorable to the State, the jury reasonably could have found the following facts beyond a reasonable doubt.  *See State v. Mitchell,* 2010 ME 73, ¶ 2, 4 A.3d 478, 480.

[¶ 3]   On October 13, 2008, Aboda and his friend visited the victim's apartment, where she lived with her nine-month-old daughter. The victim had known Aboda for

approximately a year, but she had only recently met his friend. After inviting Aboda and his friend inside her apartment, the victim sent a text message to her sister because she "was kind of scared to let them in." Within fifteen minutes, her sister arrived with her boyfriend, and the sister helped prepare dinner for everyone. After dinner, the sister and her boyfriend left because the sister thought that Aboda would be leaving soon.

[¶ 4] The victim then put her daughter to bed in another room, and Aboda and his friend asked the victim to sit with them on her couch. She told them that she would sit with them if they agreed not to touch her and to move further apart. After Aboda and his friend moved further apart, she sat down. Aboda's friend began rubbing her leg, so she got up and sat in a chair. Aboda approached her, stood in front of the chair, and tried to kiss her neck and her breasts while his friend stood next to the chair and touched her arm and leg. Aboda pulled the victim by her arms to get her to lie on the couch. She told them to stop, but Aboda grabbed her forcefully by the wrists and pulled her to the couch. The victim tried to pull back, but Aboda pushed her onto the couch and then tried to remove her pants. She kept trying to pull her pants back up, so Aboda had his friend hold her arms down. The victim was unable to break free from his friend's grip. She also thought that she could not flee because her daughter was there. Despite the victim saying, "No," Aboda took her pants down, and he held her legs when she tried to move them away. Aboda penetrated her vagina with his penis while his friend held her hands above her head.

[¶ 5] Aboda was charged with gross sexual assault (Class A) pursuant to 17–A M.R.S. § 253(1)(A), which states that "[a] person is guilty of gross sexual assault if that person engages in a sexual act with another person and ... [t]he other person submits as a result of compulsion...." *Id.* By statute, compulsion is

the use of physical force, a threat to use physical force or a combination thereof that makes a person unable to physically repel the actor or produces in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or another human being.

"Compulsion" as defined in this paragraph places no duty upon the victim to resist the actor.

17–A M.R.S. § 251(1)(E).

[¶ 6] At trial, without objection from Aboda, the court gave jury instructions that used this statutory definition of "compulsion," including the sentence indicating that there was "no duty upon the victim to resist the actor." *See id.* After retiring to deliberate, the jury asked for reinstruction on the definition of "compulsion." Aboda then raised a "concern about [the] definition of compulsion." He argued that the sentence regarding "no duty upon the victim to resist the actor"

is designed for a situation where somebody is holding a knife or threatening the person, ... I am going to hurt you if you resist and where as the test of physically unable to repel the actor in the absence of a threat or weapon, seems to me there has to be some ... effort at resistance.

The court disagreed with Aboda and reinstructed the jury with the statutory definition of "compulsion" in writing, including the "no duty upon the victim to resist" language.

[¶ 7] After the jury returned a verdict of guilty, Aboda moved for a new trial on the ground that section 251(1)(E) is uncon-

stitutionally vague. The court denied the motion, and Aboda timely appealed.[1]

## II. DISCUSSION

[¶ 8] Aboda argues that the statutory definition of compulsion is ambiguous because the provision allows for a finding of compulsion when a person is "unable to physically repel the actor," but the statute also provides that there is "no duty upon the victim to resist the actor." *Id.* Aboda therefore argues that the statute is unconstitutionally vague as to what conduct is legally forbidden and that the internal inconsistency of the statute as applied to him replaces compulsion by the actor with acquiescence by the other person.

[¶ 9] Arguments involving statutory ambiguity and unconstitutional vagueness are related but not identical. *See State v. Denis,* 304 A.2d 377, 380 (Me. 1973). Although each raises the issue of a lack of clarity and uncertainty, "not every ambiguity, uncertainty or imprecision of language in a statutory pattern" rises to the level of being unconstitutionally void for vagueness. *Id.; see State v. Thongsavanh,* 2007 ME 20, ¶ 40, 915 A.2d 421, 430 (stating that a "statute is not vague simply because we have been called upon to exercise our function of interpreting its plain meaning"). To be unconstitutionally void for vagueness, a criminal statute must fail "to define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *State v. Witham,* 2005 ME 79, ¶ 7, 876 A.2d 40, 42 (quotation marks omitted). Because Aboda asserts both that the gross

sexual assault statute is internally inconsistent and that it is unconstitutionally void for vagueness, we interpret the statute and then consider his constitutional challenge in light of our interpretation.

### A. Statutory Interpretation

[¶ 10] Interpretation of a statute is a legal question that we review de novo. *Thongsavanh,* 2007 ME 20, ¶ 27, 915 A.2d at 427. "We seek to discern from the plain language the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical." *Mahaney v. State,* 610 A.2d 738, 741 (Me.1992). We assess the language in the context of the entire legislative scheme, and "[o]nly if the language of the statute is ambiguous will we examine the legislative history or other external indicia of legislative intent." *Thongsavanh,* 2007 ME 20, ¶ 27, 915 A.2d at 427.

[¶ 11] The gross sexual assault statute at issue requires that the State prove beyond a reasonable doubt that (1) the "person engage[d] in a sexual act with another person," and (2) that "[t]he other person submit[ted] as a result of compulsion." 17–A M.R.S. § 253(1)(A). The State can prove compulsion upon evidence either that the victim was "unable to physically repel the actor," or that the actor "produce[d] in that person a reasonable fear that death, serious bodily injury or kidnapping might be imminently inflicted upon that person or another human being." *Id.* at § 251(1)(E). There is "no duty upon the victim to resist the actor."[2] *Id.*

---

1. The court sentenced Aboda to a term of fifteen years in prison, with all but nine years suspended, followed by six years of probation.

2. Aboda challenges the statutory definition of compulsion that requires the State to prove that the victim was unable to physically repel Aboda. He does not challenge the separate

"reasonable fear" basis in the statutory definition of compulsion. Because we cannot know whether the jury based its guilty finding on the State's proof that the victim was "unable to physically repel" Aboda, or on proof that Aboda's conduct produced in the victim "a reasonable fear that death, serious bodily injury or kidnapping might be imminently

[¶ 12] Aboda's argument is that the "unable to physically repel" provision requires that the victim resist enough to convey his or her lack of consent to the actor. Without such adequate resistance, Aboda contends, the actor cannot know that the other person is physically unable to repel the actor. Therefore, Aboda argues that the "no duty upon the victim to resist" language makes sense only in situations where the other person reasonably fears that death, serious bodily injury, or kidnapping might be imminently inflicted upon the victim or a third party.

[¶ 13] A careful review of the statutory scheme, however, demonstrates the flaw in Aboda's analysis. Neither the "unable to physically repel" nor the "no duty upon the victim to resist" provision is ambiguous on its own, nor is there any ambiguity created when the two provisions are read together.[3] *See id.* Guiding our interpretation is the principle that "[p]roof of compulsion properly focuses on the acts of the perpetrator of a sexual assault." *State v. Rackliffe*, 2010 ME 70, ¶ 10, 1 A.3d 438, 440. Focusing on the acts of the perpetrator, a person reasonably can be expected to understand the degree of force he or she is asserting, and to know when that force is sufficient to physically overpower the other person. It is not unreasonable to expect an actor to understand when that actor's conduct has rendered another person unable to physically repel the actor even in circumstances where the victim does not, in fact, physically resist. Thus, the statutory definition of "compulsion" is neither ambiguous nor internally inconsistent.[4]

## B. Unconstitutional Vagueness

[¶ 14] Having interpreted the gross sexual assault statute's plain meaning, we now address Aboda's contention that the statute is unconstitutionally void for vagueness. Pursuant to principles of due process, a criminal statute is unconstitutionally vague when it "fails to provide sufficient definiteness that an ordinary person can understand what conduct is forbidden and encourages arbitrary and discriminatory enforcement." *Thongsavanh*, 2007 ME 20, ¶ 36, 915 A.2d at 429 (citations omitted); *see State v. Gray*, 440 A.2d 1062, 1064 (Me.1982). The statutory language does not require "objective quantification, mathematical certainty, and absolute precision," and we will uphold the statute if any reasonable construction will

inflicted," 17-A M.R.S. § 251(1)(E) (2009), we will assume for purposes of this appeal that the jury relied on the "unable to physically repel" element. Therefore, we address Aboda's argument that the "unable to physically repel" language is inconsistent with the "no duty to resist" language.

3. Even if we were to find ambiguity and examine the legislative history and intent, the legislative history of the 1991 amendment to section 251(1)(E) supports our plain language construction. By adding the "no duty upon the victim to resist" language, the Legislature intended to "clarif[y] the present statutory definition of compulsion by adding a clear statement that the victim of compelled sexual assault is not required to 'fight back' or otherwise resist in any way." Comm. Amend. A to

L.D. 544, No. S-236, Statement of Fact (115th Legis.1991). This clarification codified law developed in our opinions in which we affirmed convictions for compelled sexual assault where the victims did not physically resist the actors. *See id.* (citing *State v. Warren*, 571 A.2d 231 (Me.1990); *State v. Ricci*, 507 A.2d 587 (Me.1986); *State v. Levesque*, 479 A.2d 1302 (Me.1984)).

4. We are mindful of our earlier statement in dictum that the plain language of section 251(1)(E) is "internally inconsistent." *See State v. Maizeroi*, 2000 ME 187, ¶ 15, 760 A.2d 638, 643. We have not applied this dictum in subsequent cases, and, after careful consideration of the statutory language, we disavow the dictum.

support it. *Witham,* 2005 ME 79, ¶ 7, 876 A.2d at 42 (quotation marks omitted).

[¶ 15] In a facial challenge to a statute on vagueness grounds, "we need not examine the facial validity of the statute and test its constitutionality in all conceivable factual contexts." *Gray,* 440 A.2d at 1064; *see Me. Milk Producers, Inc. v. Comm'r of Agric.,* 483 A.2d 1213, 1220 (Me.1984) ("An attack on a statute for facial unconstitutionality due to vagueness will not be supported merely because some hypothetical situations may require future judicial interpretation of the statutory language." (citations omitted)). Rather, we assess the "void for vagueness challenge by testing it in the circumstances of the individual case" and considering whether the statutory language was sufficiently clear to give the defendant adequate notice that his conduct was proscribed. *Thongsavanh,* 2007 ME 20, ¶ 36, 915 A.2d at 429; *Gray,* 440 A.2d at 1064; *see State v. Crocker,* 435 A.2d 58, 83–85 (Me.1981) (Carter, J., concurring).

[¶ 16] As we concluded above, the gross sexual assault statute and the definition of compulsion are unambiguous. In these circumstances, Aboda's facial challenge to the constitutionality of these statutes is unpersuasive. The statutes are sufficiently definite to allow ordinary people to understand that it is against the law to compel another person to have intercourse through the use or threat of physi-

cal force, even if the other person does not physically resist. *See Witham,* 2005 ME 79, ¶ 7, 876 A.2d at 42.

[¶ 17] Addressing Aboda's vagueness challenge in the circumstances of his individual actions, there is no question that the statutory language was sufficiently clear to give him adequate notice that his conduct was prohibited. Aboda should have been aware that, by restraining the victim with his friend and forcing intercourse on her, he was violating the law. She said "no," she said "stop," and she tried to move her legs away. Accordingly, sections 251(1)(E) and 253(1)(A) are not unconstitutionally vague as applied to the circumstances of this case. *See Thongsavanh,* 2007 ME 20, ¶ 36, 915 A.2d at 429.

[¶ 18] Because the gross sexual assault statute and the definition of compulsion are unambiguous, and because the statutes are not unconstitutionally vague, either facially or as applied, we affirm the judgment of conviction.

The entry is:

Judgment affirmed.