2006 ME 6

**Audrey L. STREET**

v.

**BOARD OF LICENSING OF AUCTIONEERS.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 24, 2005.

Decided: Jan. 19, 2006.

Ralph A. Dyer, Esq., Law Offices of Ralph A. Dyer, P.A., Portland, for plaintiff.

G. Steven Rowe, Attorney General, Dennis E. Smith, Asst. Atty. Gen., Augusta, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Audrey L. Street appeals from a decision of the Superior Court (Penobscot County, *Mead, J.*) affirming the decision of

the Board of Licensing of Auctioneers in which the Board sanctioned Street for violating two statutory provisions regulating auctions set out in 32 M.R.S.A. §§ 291(1)(B), 298 (Supp.2005). Street contends that the Board erred in determining that she violated both provisions. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The Board made the following findings of fact based on competent record evidence. Street has been a licensed auctioneer in Maine since 2002, and conducts her auctions at "Audrey's Auction and Treasure Barn" (the Barn) located in Howland. Arthur P. Wood is an auctioneer licensed in several states, including North Carolina, but is not a licensed auctioneer in Maine.

[¶ 3] After seeing an advertisement in *Uncle Henry's* magazine placed by Street regarding her auctions, Wood contacted Street. Street and Wood originally agreed to hold a joint auction at the Barn on September 6, 2002, in which items belonging to both would be sold. Street advertised the auction in a local newspaper and on the radio.

[¶ 4] Shortly before the auction was to take place, Street received information that led her to question Wood's credibility. Based on that information, Street decided not to offer any of her own goods for sale at the auction, and not to have her own auctioneer "call" the auction.

[¶ 5] The auction took place as scheduled at the Barn. Street's auctioneer did not call the auction. Street was present at the auction, however, and she and her staff recorded, inventoried, and collected the money for every item sold. Following the auction, Street reviewed the sales records with Wood's wife, deducted from the proceeds the applicable State sales tax, and then paid Wood's wife their portion of the remaining amount. Wood never received a written accounting of the auction proceeds.

[¶ 6] In September of 2002, Wood filed a complaint against Street with the Board alleging that Street conducted the auction but refused to provide an accounting or a written contract. Following a hearing, the Board issued its decision dated February 23, 2004, concluding that Street violated 32 M.R.S.A. § 291(1)(B) in failing to provide a written accounting to Wood within a reasonable time. The Board also concluded that Street violated 32 M.R.S.A. § 298 in conducting the auction without providing a written contract to Wood. The Board sanctioned Street with a letter of warning, imposed a fine of $300, and ordered her to pay costs in the amount of $959.29.

[¶ 7] Pursuant to M.R. Civ. P. 80C, Street appealed the Board's decision to the Superior Court. The Superior Court affirmed the decision of the Board. Street then filed this appeal.

## II. DISCUSSION

[¶ 8] Street challenges the Board's conclusions that she violated sections 291(1)(B) and 298. When, as here, the Superior Court acts in its intermediate appellate capacity in reviewing the decision of an administrative agency, we review directly the decision of the agency. *Med. Mut. Ins. Co. of Me. v. Bureau of Ins.*, 2005 ME 12, ¶ 5, 866 A.2d 117, 119–20. We review the factual findings of an agency only for clear error. *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me.1991). A finding of fact is clearly erroneous if no record evidence exists to support it or if it is based on "a clear misapprehension of the meaning of the evidence." *White v. Zela*, 1997 ME 8, ¶ 3, 687 A.2d 645, 646.

[¶ 9] Further, in reviewing the Board's interpretation of a statute it administers, we must first determine if the statute is ambiguous. *Competitive Energy Servs. LLC v. Pub. Utils. Comm'n,* 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. If the statute is unambiguous, we "plainly construe the unambiguous statute" without deference to the Board's construction. *Id.* Nevertheless, "[a]n agency's interpretation of an ambiguous statute it administers is reviewed with great deference and will be upheld unless the statute plainly compels a contrary result." *Id.* (quotation marks omitted).

A. Auction, Auctioneer, and Consignor

[¶ 10] Street first contends that the sale of Wood's property did not constitute an auction, that she did not act as auctioneer, and that Wood does not qualify as a consignor within the meaning of the statute. Because sections 291(1)(B) and 298 are applicable to her only in the course of conducting an auction as auctioneer and on behalf of a consignor, she argues, the Board erred in determining that she violated both provisions.

[¶ 11] "Auction" is defined as "the offering of goods or real estate for sale by means of exchanges between an auctioneer and bidders." 32 M.R.S.A. § 284(1) (Supp. 2005). Street argues that no auction took place because Wood's goods were not sold to the highest bidder in the traditional auction format. Rather, a "pass-out" auction took place in which, as the testimony indicated, "an item is offered up and if the price is to the liking or at least there's a profit, then more than one item might be sold to all those who wish to purchase it at the price that it was sold for at the auction." As the Superior Court noted, however, the definition of "auction" in section 284 does not require that goods be sold to the highest bidder in accordance with the tra-

ditional auction format. Rather, the term "auction" unambiguously applies to the offering of goods by means of *any* type of exchange between auctioneer and bidder, as occurred in this case. *See* 32 M.R.S.A. § 284(1). There is no support for Street's attempt to limit the statute's plainly broad definition of "auction," and the Board's determination that an auction took place is not error.

[¶ 12] "[A]uctioneer" is defined as "any person who conducts, advertises or offers that person's service to conduct auctions; contracts or offers to contract with consignors of real or personal property, with or without receiving or collecting a fee, commission or other valuable consideration; or sells or offers to sell property at auction." 32 M.R.S.A. § 284(2) (Supp. 2005). Street contends that she did not act as auctioneer, but instead, merely provided administrative assistance and the venue in which the sale was conducted.

[¶ 13] Competent evidence was presented to the Board, however, that Street advertised herself as an auctioneer in *Uncle Henry's,* that she formed an oral contract with Wood to hold an auction at her facility within the scope of her auctioneering license, that she agreed to hold Wood's property in anticipation of the auction, that she advertised Wood's auction, and that she took a primary role in accepting the payments at the sale itself. That Street did not actually "call" the auction is not dispositive in her favor, as the statute contains no such requirement in its definition of "auctioneer." From these facts, the Board reasonably determined that Street's actions fell within the definition of "auctioneer" pursuant to section 284(2).

[¶ 14] Finally, Street argues that Wood does not constitute a consignor within the statutory definition because no traditional consignment relationship existed

between them. A "consignor" is defined in the statute simply as "the bona fide owner, agent or party in interest of the personal property or real estate being offered for sale." 32 M.R.S.A. § 284(6) (Supp.2005). Thus, the statute identifies a consignor merely as the owner of the goods being offered for sale. 32 M.R.S.A. § 284(6). There is no dispute in this case that Wood owned the goods sold, and Street concedes as much in her brief. Despite Street's argument to the contrary, the statute does not require the existence of any particular type of "consignment" relationship between auctioneer and consignor. Thus, we do not disturb the Board's findings that an auction took place, that Street acted as auctioneer, and that Wood was the consignor.

B. Failure to Provide an Accounting

■ [¶ 15] Street next contends that the Board committed clear error in concluding that she violated the mandate of 32 M.R.S.A. § 291(1)(B). That section provides: "After a hearing ... the board has the authority to impose disciplinary sanctions at any time when a licensee is found

guilty of ... [f]ailure, within a reasonable time, to account for or remit any money or property coming into the licensee's possession that belongs to others." 32 M.R.S.A. § 291(1)(B). "Reasonable period of time" is further defined in the statute as "not more than 30 days from the date of the auction or such other time as is stated in a contract." 32 M.R.S.A. § 284(9) (Supp. 2005).

[¶ 16] Before the Board, Street contended that section 291(1)(B) requires that an auctioneer *either* give an accounting *or* remit the proceeds within thirty days, but does not require both. Because there is no dispute that Street remitted the proceeds from the sale to Wood within thirty days, she contended that she fully complied with the requirements of section 291(1)(B). The Board disagreed with Street, and concluded that section 291(1)(B) requires that Street *both* submit an accounting *and* remit the proceeds to Wood within thirty days, and that because she did not submit any such accounting within that time, she was in violation of section 291(1)(B).[1]

---

1. More specifically, the Board determined that, although the statute contains the commonly disjunctive "or," as used in section 291(1)(B), the term should instead be read as the conjunctive "and." The Board's rationale for this conclusion was twofold. First, pursuant to 1 M.R.S.A. § 71(2), "[t]he words 'and' and 'or' are convertible as the sense of a statute may require." 1 M.R.S.A. § 71(2) (1989). Second, the Board determined that the "sense" of section 291(1)(B) required just such a conjunctive use because if the statute were interpreted to require *either* an accounting or the remitting of proceeds, an auctioneer could provide the accounting but would otherwise have no duty to actually remit the proceeds of the auction to the rightful owner, which would be an absurd result.

We note, too, that the "sense" of the statute may also be affected by the imposition of a positive duty versus a negative one. Whereas a positive duty, requiring, for example, "this

person must do A or B" may unambiguously connote the disjunctive and require only that either A or B be performed, a negative duty, as in section 291(1)(B) may produce a different connotation. A statute that states, for example, "failure of this person to do X or Y" could be read to require that the actor must complete *either X or Y*, or it could be read to require that failure of the actor to do X *or* failure of the actor to do Y constitutes a violation of the provision, and thus that the actor is bound to complete *both X and Y*. Because section 291(1)(B), also phrased as a negative duty, is susceptible to multiple reasonable interpretations, it may be deemed ambiguous. *See Competitive Energy Servs. LLC v. Pub. Utils. Comm'n*, 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. When a provision is ambiguous, we defer to the Board in its interpretation of a statute it administers unless the statute plainly compels a contrary result. *Id.*

[¶ 17] In this appeal, Street does not challenge that conclusion of the Board. Rather, Street acknowledges her duty to account, and argues instead that section 291(1)(B) does not require that the accounting an auctioneer provides be in written format. Street contends that her duty to provide an accounting was thus satisfied when she and Wood's wife extensively reviewed together the detailed record of every receipt following the sale.

[¶ 18] Because section 291(1)(B) is subject to these multiple reasonable interpretations, and is therefore ambiguous, we defer to the Board's determination that section 291(1)(B) requires the accounting be in written format. *See Competitive Energy Servs.*, 2003 ME 12, ¶ 15, 818 A.2d at 1046. The auction statutes are the very statutes the Board is charged with enforcing, the accounting requirements of auctioneers are within the expertise of the Board, and the language of section 291(1)(B) does not plainly compel a contrary result. *See id.* Thus, the decision of the Board that, pursuant to section 291(1)(B), Street was required to and failed to provide Wood with a written accounting does not constitute clear error.[2]

C. Failure to Provide a Written Contract

 [¶ 19] Finally, Street contends that the Board committed clear error in concluding that she violated 32 M.R.S.A. § 298 in failing to provide a written contract to Wood. Section 298 requires:

**1. Contract required.** An auctioneer may not conduct an auction in this State without first having a written contract with the consignor of any property to be sold. The contract must contain the date of the contract and the name and license number of the auctioneer.

The contract must contain the terms and conditions of the auction, including but not limited to:

A. The description of all items to be sold;

B. Whether the auction is with reserve or without reserve;

C. The payment schedule;

D. The commission rate; and

E. The statement of other charges, including a buyer's premium.

32 M.R.S.A. § 298. Street argues that Wood waived this written contract provision by moving forward with the sale with the knowledge that no such written contract existed.

[¶ 20] The express language of the statute plainly compels, without exception, an auctioneer to provide a written contract. There is nothing in the statute, and Street has cited to no authority, to support her contention that a consignor may waive the written contract requirement of section 298, or that if a consignor purports to do so, such waiver can take the place of the auctioneer's professional duty imposed by statute to provide a written contract. Thus, because it is undisputed in this case that Street did not provide Wood with a written contract, we do not disturb the Board's conclusion that Street also violated the written contract mandate of section 298.

The entry is:

Judgment affirmed.

---

**2.** We are unpersuaded by Street's contention that Wood's acceptance of the proceeds of the sale constitutes an accord and satisfaction that operates to waive the statutory duty to provide an accounting.