STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        Docket No. AP-09-10
                                                        TD/\/⁻

FAMILY CRISIS SERVICES INC.,

        Plaintiff,

    v.                                                 ORDER

MAINE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

        Defendant.


Family Crisis Services Inc. (FCS) appeals pursuant to Rule 80C from a decision of

the Commissioner of DHHS adopting the decision of an administrative hearing officer

that FCS's appeal be denied. FCS had appealed from a decision of the DHHS Office of

Audit that disallowed $ 22,772 in pension costs for fiscal year 2005 thereby requiring

FCI to repay DHHS $14,162.

Under Rule 80C and 5 M.R.S. § 11007(C), an agency's decision will be reviewed

for abuse of discretion, error of law, or findings not supported by substantial evidence

in the record. E.g., Rangeley Crossroads Coalition v. Land Use Regulation Commission,

2008 ME 115 ¶ 10, 955 A.2d 223, 227.[1] The court should not substitute is own judgment

for that of the agency and must affirm findings of fact if they are supported by

substantial evidence in the record. An agency's interpretation of its rules and

regulations, or procedures will be afforded deference and will not be set aside unless

the rules or regulations plainly compel a contrary result. Id.

---

[1] Agency decisions may also be reversed for constitutional or statutory violations, if they are in excess of statutory authority, or are made upon unlawful procedure. 5 M.R.S.§ 11007(C)(1)-(3). FCS does not raise any issues of this nature on this appeal.

FCS is a nonprofit corporation that provides services to victims of domestic violence in Cumberland and Sagadahoc counties and obtains part of its funding from the State. FCS's State funding is administered by DHHS pursuant to yearly funding agreements which are governed by the Maine Uniform Accounting and Auditing Practices for Community Agencies (MAAP).

FCS's original budget for FY 2005 included pension costs in the amount of $ 37,392.00. In early August 2005, approximately two months before the end of the fiscal year, the FCS Board met to consider reallocating the remaining funds in its budget. It voted to increase the amount of funds allocated for pension costs by $22,700 to a total of $ 60,300. This action was taken because the Board expected a budget cut for the following year with a likelihood of a salary freeze and little to no pension contribution.

On August 30, 2005 FCS submitted a budget revision request to DHHS. The request expressly noted the increased pension allocation. R. Ex. D-3. On October 25, 2005 Debbie Barter Walsh, the Agreement Administrator for DHHS, wrote back to state that the budget revision request was approved.

Subsequently, pursuant to its standard procedures and the MAAP regulations, the SHHS Office of Audit performed an audit on the 2005 funding agreement with FSC, reconciling actual costs incurred against allowable expenses. On October 5, 2007 the Office of Audit issued an examination report disallowing the additional $22,700 pension contribution. The Office of Audit determined that the increased pension allocation violated a provision of the funding agreement that "bonus payments and any after the fact payments to share in a program surplus are unallowable." This specific provision is found in the boilerplate of the funding agreement (R. Ex. D-1) at Rider E, p. 18.

## 1. The Agency's Decision

It would not be immediately apparent to anyone, save perhaps a DHHS auditor familiar with the interstices of Rider E, that funds unspent two months before the end of the fiscal year would constitute a "surplus" or that using those funds to increase a pension contribution would constitute a "bonus." See Recommended Decision of Administrative Hearing Officer at 5 (noting that it is "awkward" to apply the term "surplus" to the funds at issue and that it is also "not typical" to use the term "bonus" in this context). Nevertheless under the legal principles stated above – that an agency's interpretation of its rules and regulations is entitled to deference and that the agency's findings will not be overturned unless there is no record evidence to support them, see Street v. Board of Licensing of Auctioneers, 2006 ME 6 ¶8, 889 A.2d 319. 321 – the court concludes that the Office of Audit's determination disallowing the increased pension contribution is not subject to reversal on the merits.

## 2. Equitable Estoppel

FCS argues that based on its October 2005 approval, DHHS is equitably estopped from retroactively disallowing the increased pension contribution. To prove equitable estoppel against a governmental entity, the party asserting it must demonstrate that (1) a governmental official or agency made a misrepresentation; (2) the statements or conduct of the governmental official or agency induced the party to act; (3) the reliance was reasonable; and (4) the reliance was detrimental. DHHS v. Pelletier, 2009 ME 11 ¶¶ 17-18, 964 A.2d 630, 635-36.

In this case it does not appear to be disputed that, once FCS received the October 25, 2005 approval from Ms. Barter Walsh, the Agreement Administrator, FCS then made the pension contributions in question to its employees. Thus the second and fourth

elements of equitable estoppel set forth above have been met. DHHS, however, disputes that the October 2005 approval constituted a misrepresentation and disputes that FCS's reliance on that approval was reasonable. On these issues DHHS is not entitled to the deference it would receive if it were interpreting its own rules, nor are there any factual issues on which the substantial evidence rule would apply. The facts are undisputed.

On the undisputed record the court concludes that there was a misrepresentation and that FCS's reliance was reasonable. By approving the budget revision request, Ms. Barter Walsh, the Administrator of the funding agreement, represented that DHHS would allow the increased pension contribution. That constituted a misrepresentation.[2]

To be sure, the October 2005 approval did not represent that the funding agreement would not be audited, and DHHS had every right to audit the funds spent under that agreement. If FCS had not made full disclosure of the manner in which it intended to spend the funds in question, or if the funds in question had been diverted to cover some other expense, DHHS's approval would not constitute a misrepresentation. The same would be true if, in the manner in which it made the approved pension contribution, FCS had violated some other rule or regulation. In this case, however, DHHS is contending that FCS was not allowed to make any increased pension contribution even though the October 2005 approval specifically authorized such an increased contribution.

This would also be a different case if the increased pension contribution clearly violated a provision of the regulations or the funding agreement. Compare Families United of Washington County v. Commissioner, Department of Mental Health and Mental Retardation, 617 A.2d 205, 207 (Me. 1992) (statement by agency trumped by

_____

[2] There is no basis to find that Ms. Barter Walsh knew her approval was incorrect, but a deliberate or knowing misrepresentation is not required for equitable estoppel. Berry v. Board of Trustees, 663 A.2d 14, 19 (Me. 1995).

4

clearly stated statutory provision governing appeals). In this case there was no clear provision in the regulations or the funding agreement that barred an increased pension contribution. The issue is whether, in interpreting the agreement and applicable regulations, such a contribution was permissible. The October 2005 approval was a representation that DHHS, in interpreting its regulations and the funding agreement, had determined that the increased pension contribution was permissible.

This case therefore turns on whether FCS's reliance on the October 2005 approval was reasonable. The record demonstrates that Ms. Barter Walsh was the Agreement Administrator and was the appropriate official to approve budget revisions. That distinguishes this case from the cases relied upon by DHHS. See Kittery Retail Ventures LLC v. Town of Kittery, 2004 ME 65 ¶36, 856 A.2d 1183, 1194 (developer cannot rely on unauthorized statements of town official); Trull Nursing Home Inc. v. Maine Department of Human Services, 461 A.2d 490, 499 (Me. 1983) (nursing home had no valid reason to believe that the auditor to whom it spoke had the authority to represent the official position of the Department). In this case Ms. Barter Walsh had the authority to approve budget revisions and FCS had a valid reason to believe that she spoke for DHHS.

The entry shall be:

The decision of DHHS disallowing the $22,722 increased pension contribution under plaintiff's 2005 funding agreement and requiring reimbursement of $ 14,162 is reversed. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: December ___4___, 2009

_Thomas D. Warren_
Justice, Superior Court

5

Date Filed __04-14-09__ __CUMBERLAND__ Docket No. __AP-09-10__
County

Action _____80C Appeal_____

FAMILY CRISIS SERVICES, INC      MAINE DEPART OF HEALTH & HUMAN SERVICES
BRENDA M. HARVEY, COMMISSIONER DHHS

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JONATHAN M. GOODMAN, ESQ. | JANE GREGORY AAG |