MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 159
Docket:       Han-15-452
Argued:       September 14, 2016
Decided:      October 25, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

## STATE OF MAINE

v.

## CHRISTOPHER SAENZ

SAUFLEY, C.J.

[¶1]  Hilary Saenz died in her Ellsworth home on Christmas Day, 2013, after several days of beatings and injuries inflicted on her by her husband while her children were present.  The immediate cause of her death was a subdural hematoma, a brain bleed that caused her to lose consciousness and die.  Her husband, Christopher Saenz, was charged with her murder, and, following a jury-waived trial in the Superior Court (Hancock County, *A. Murray, J.*), convicted of depraved indifference murder, 17-A M.R.S. § 201(1)(B) (2015).  He appeals, arguing that there was insufficient evidence for the court to have found beyond a reasonable doubt that (1) his actions caused his wife's death, and (2) he acted with a depraved indifference to the

2

value of human life. *See id.*; *State v. Erskine*, 2006 ME 5, ¶ 9, 889 A.2d 312. We affirm the judgment.

## I. BACKGROUND

[¶2]  Because Saenz challenges the sufficiency of the evidence, we summarize the trial court's extensive, supported factual findings in detail.

[¶3]  In November and December 2013, Hilary Saenz and Christopher Saenz were living together with their twelve-year-old daughter and eight-year-old son.  In November 2013, Saenz expressed suspicion that his wife was cheating on him after he borrowed her telephone and did not recognize some of the telephone numbers in the call history.  In the weeks leading up to Christmas 2013, Saenz argued with his wife about the numbers on her telephone four or five days per week.

[¶4]  Saenz physically assaulted his wife during many of these arguments.  Over the course of December 22 through December 24, Saenz grabbed Hilary's arms, pushed her away, and smacked her face, causing a black eye.  He also punched her legs, punched her arm, pushed her, held her down on a chair with his knee in her stomach, and squeezed her hand so tightly it bent the ring on her finger.  On December 23, Saenz punched Hilary in the forehead during an argument in front of their son.

[¶5]   On December 24, the daughter observed bruising near her mother's eyebrow, cheekbone, and nose.  Saenz admitted to his daughter that he had punched her mother in the face.  He promised her that he would not do it again.  That night, the daughter woke up in the middle of the night and saw Saenz pin her mother on the couch and hold her hands back.

[¶6]   In the early morning of December 25, a neighbor who lived diagonally across the street awoke to loud banging and profanity.  He looked outside to see Saenz slamming the apartment door repeatedly and yelling back toward the inside of the apartment.

[¶7]   After the children opened presents on Christmas morning, Saenz again argued with Hilary about the unknown calls and texts on her telephone. The daughter told Saenz to stop fighting because it was Christmas, and he said that he would try.

[¶8]   Saenz and his wife then took a nap in their bedroom.  After they woke up from the nap, they resumed arguing in the living room and then went into their bedroom and closed the door.

[¶9]   The daughter initially heard shouting from the bedroom, then she could not hear arguing any more.  Saenz came out of the bedroom, went into the daughter's room and took her telephone.  Later, Saenz told the daughter

4

and son to go to the neighbor's home because he was going to call an ambulance. The daughter testified that Saenz told her their mother had "passed out."

[¶10] At 2:13 p.m., Saenz performed an internet search for "What do you do when someone gets knocked out." Eight minutes later, he performed another search and reviewed an article titled "Helping a Person During an Epileptic Seizure." Saenz called the local hospital seven minutes after this search and the charge nurse told him to call 9-1-1. After he had called and texted his mother several times over the next ten minutes, Saenz dialed 9-1-1, but the call never connected. Shortly thereafter, Saenz spoke with his mother on the telephone for just under three minutes. More than half an hour after Saenz's initial web search, he again called 9-1-1, and an ambulance arrived a few minutes later. The court heard testimony that soon after the ambulance arrived, Hilary's pulse stopped, and although rescue personnel performed CPR for more than half an hour, until 3:33 p.m., they could not resuscitate her, and Hilary died at her home.

[¶11] The cause of Hilary's death was blunt force trauma to her head and torso. These traumas caused a subdural hematoma and a lacerated liver, which were the fatal injuries. The immediate cause of her death was the

subdural hematoma. The lacerated liver was a potentially fatal injury, but it, alone, would not have caused Hilary's death on the day she died.

[¶12] At the time of her death, Hilary had more than fifty visible, external bruises on her body, including at least fifteen bruises on her head. Among these were injuries to her forehead, chin, and right eye that were hours or days old, and there was a bruise to her abdomen that was days old. She also had multiple internal bruises.

[¶13] Several of Hilary's bruises were caused by multiple injuries that occurred at different times. Her left temple had both an older injury and an injury that was only minutes or hours old. There were bruises to the top of Hilary's skull and to her right temple that were caused by older injuries as well as injuries that were hours old.

[¶14] Saenz gave a variety of accounts of the events leading up to his wife's death. When he called the hospital, he told the receptionist that his "buddy" had hit his head after falling on ice and was having a seizure. Saenz told the ambulance personnel that his wife was dizzy, fell and hit her head on the bed, and had a seizure. He also made statements that she had hit her head on the mattress, that she had hit her head on the floor, that she "might" have fallen, that it might have been a reaction to medication, that she had recently

6

changed medications, and that she and his ex-girlfriend had recently gotten into a fight.

[¶15]  Two days after his wife's death, Saenz was arrested for her murder, and he was later charged, by a single-count indictment, with intentional or knowing murder, 17-A M.R.S § 201(1)(A) (2015), or, in the alternative, depraved indifference murder, 17-A M.R.S. § 201(1)(B).  The court held a jury-waived trial from May 18 to May 28, 2015, during which it heard testimony from the children, rescue personnel, police officers, neighbors, friends, coworkers, and competing medical experts.

[¶16]  The court heard specific testimony from the medical examiner that a punch to the head could cause a subdural hematoma and that the risk increases with multiple blows.

[¶17]  As part of his alternative argument that Hilary's death was brought about by a "spontaneous" seizure[1] that caused her to fall and strike her head, Saenz offered expert testimony that Hilary's subdural hematoma was unlikely to have been caused by a punch.  Saenz introduced evidence that his wife had sustained head injuries from a motor vehicle accident and from a fall on ice, years earlier, in support of this explanation.  However, the court

---

[1]  In other words, a seizure not caused by Saenz's beatings.

also heard testimony that Hilary had never been diagnosed with a seizure disorder and had denied ever having had a seizure when asked by medical personnel on at least four occasions. There was additional testimony that after his wife's death, Saenz told at least three people that she had never had a seizure before the day she died.

[¶18] Based on the evidence presented, the court found that the State had proved beyond a reasonable doubt that Saenz caused Hilary's death by inflicting blunt force trauma to her head within the thirty-six hours before her death and that this trauma either directly caused the subdural hematoma or caused her to fall and strike the floor with the same result. The court further found that the physical violence Saenz inflicted on his wife in the days leading up to her death and the delay in seeking medical assistance amounted to a depraved indifference to the value of human life.

[¶19] In accordance with these findings, the court found Saenz guilty of depraved indifference murder, entered a judgment of conviction, and sentenced him to forty-seven years' imprisonment. Saenz was thirty-two years old at the time of sentencing. Hilary was twenty-nine years old when she died.

[¶20] Saenz timely appealed from the conviction.

## II. DISCUSSION

[¶21]   Saenz does not dispute the court's findings that he repeatedly beat his wife over the course of multiple days, inflicting head-to-toe bruising and internal injuries.  He argues, however, that those assaults did not cause the fatal injury.  Saenz argues that there was insufficient evidence for the court to have found that he caused his wife's death because his experts testified that it is unlikely for a punch to the head to cause a subdural hematoma.  He urges us to conclude that the court should have accepted the testimony of his experts that a spontaneous seizure and resulting fall was the most likely cause of the subdural hematoma.  Further, Saenz argues that there was insufficient evidence for the court to find that he acted with depraved indifference to the value of human life.

[¶22]   "When a criminal defendant contends that the evidence was insufficient to support the conviction, we view the evidence in the light most favorable to the State to determine whether the trier of fact rationally could have found beyond a reasonable doubt every element of the offense charged." *Erskine*, 2006 ME 5, ¶ 9, 889 A.2d 312 (quotation marks omitted).  "It is the prerogative of the fact-finder to resolve conflicting issues of fact," and thus "[w]e defer to all credibility determinations made by the fact-finder." *State v.*

*Hodsdon*, 2016 ME 46, ¶ 8, 135 A.3d 816 (quotation marks omitted). "[F]actual findings may be supported by reasonable inferences drawn from all the circumstances even if those inferences are contradicted by parts of the direct evidence." *State v. Stinson*, 2000 ME 87, ¶ 8, 751 A.2d 1011.

[¶23]  The Legislature has established that a "person is guilty of murder if the person . . . [e]ngages in conduct that manifests a depraved indifference to the value of human life and that in fact causes the death of another human being."   17-A M.R.S. § 201(1)(B).   "[A] verdict of guilty of depraved indifference murder is appropriate where the accused's conduct, objectively viewed, created such a high tendency to produce death that the law attributes to him the highest degree of blameworthiness." *State v. Crocker*, 435 A.2d 58, 63 (Me. 1981) (quotation marks omitted); *see also State v. Witham*, 2005 ME 79, ¶ 8, 876 A.2d 40.  In order for a fact-finder to find an accused person guilty of depraved indifference murder, the adjudicator must conclude that the defendant "consciously . . . engaged in conduct that he should have known would create a very high degree of risk of death or serious bodily injury and it must also under the circumstances [have been] unjustifiable for him to take the risk." *Crocker*, 435 A.2d at 63 (quotation marks omitted)*.* "Put differently, death-producing conduct will justify a verdict of guilty of depraved

indifference murder if a jury could find that that conduct was so heinous in the eyes of the law as to constitute murder." *Id.* (quotation marks omitted).

[¶24]   The evidence here was more than sufficient for the court rationally to have found beyond a reasonable doubt that Saenz inflicted blunt impact trauma on Hilary's head that caused the fatal subdural hematoma either directly or by causing a fatal fall.  Contrary to Saenz's assertions, the State presented competent evidence at trial to demonstrate that it is possible for blunt force trauma, such as a blow to the head, to cause a subdural hematoma.  The court could both reject the opinions of Saenz's experts that subdural hematomas are not commonly caused by blows to the head, or it could accept those opinions but nevertheless find that Hilary's subdural hematoma was caused by such a blow in this case.  The court was thus free to reject Saenz's alternative explanation that the subdural hematoma resulted from an unrelated fall caused by a spontaneous seizure.

[¶25]  Ultimately, the evidence of his unrelenting and horrific abuse of Hilary over hours and days, including multiple blows to her head resulting in her death, along with his delay in seeking medical assistance, fully support the court's findings that Saenz killed his wife and that he acted with a depraved indifference to the value of human life in doing so.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Robert Van Horn, Esq., Ellsworth, and Jeffrey C. Toothaker, Esq., Ellsworth, for appellant Christopher Saenz

Janet T. Mills, Attorney General, and Lara M. Nomani, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

**At oral argument:**

Robert Van Horn, Esq., for appellant Christopher Saenz

Lara M. Nomani, Asst. Atty. Gen., for appellee State of Maine

Hancock County Unified Criminal Docket docket number CR-2013-529
For Clerk Reference Only